**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

JAMES AMEDEE, On Behalf of Himself and All Others Similarly Situated,

      Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, INC.,
JEFF K. STOREY,
JAMES O. ELLIS, JR.,
KEVIN P. CHILTON,
STEVEN T. CLONTZ,
IRENE M. ESTEVES,
T. MICHAEL GLENN,
SPENCER B. HAYS,
MICHAEL J. MAHONEY,
KEVIN W. MOONEY,
PETER SEAH LIM HUAT, and
PETER VAN OPPEN,

      Defendants.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff James Amedee ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public stockholders of Level 3 Communications, Inc. ("Level 3" or the "Company") against Level 3 and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated

thereunder and to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by CenturyLink, Inc. ("CenturyLink"), through its wholly-owned subsidiaries Wildcat Merger Sub 1 LLC ("Merger Sub 1") and WWG Merger Sub LLC ("Merger Sub 2") (the "Proposed Transaction").

2.       Level 3 describes itself as a multinational telecommunications and internet service provider that operates a Tier 1 network.  The Company operates extensive fiber networks on three continents and undersea facilities that facilitate a global services platform reaching more than 500 markets in more than 60 countries.

3.       On October 31, 2016, Level 3 and CenturyLink issued a joint press release announcing their entry into an Agreement and Plan of Merger (the "Merger Agreement") to sell each share of the Company to CenturyLink for: (i) $26.50 in cash ("Cash Consideration"); and (ii) a fixed exchange ratio of 1.4286 shares of CenturyLink stock ("Stock Consideration" and together with the Cash Consideration, the "Merger Consideration").  The Proposed Transaction is valued at approximately $34 billion.

4.       The Proposed Transaction is the result of an inadequate process.  The Board entered into the transaction with CenturyLink without any reasonable basis for determining that it secured the best value reasonably available for the Company's stockholders by failing to pursue a pre-signing market check.

5.       Level 3 insiders stand to gain handsomely from the Proposed Transaction, by gaining liquidity for their otherwise illiquid shares and options.  Level 3's President and Chief Executive Officer ("CEO") Jeff K. Storey ("Storey") *alone* stands to receive *over $33 million* in golden parachute compensation.  While Level 3's public stockholders will lose control of the Company for an unfair price, certain Company insiders will substantially benefit if the Proposed

Transaction is consummated.

6.       Finally, in an attempt to secure stockholder support for the Proposed Transaction, on December 16, 2016, the Company filed a Schedule 14A Preliminary Proxy Statement (the "Proxy") with the U.S. Securities and Exchange Commission ("SEC").   The Proxy, which recommends that Level 3 stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Level 3 management's projections, utilized by Citigroup Global Markets Inc. ("Citi") and Lazard Frères & Co. LLC ("Lazard") in their financial analyses; (ii) the valuation analyses prepared by Citi and Lazard in connection with the rendering of their fairness opinions; and (iii) material information concerning the sale process leading up to the Proposed Transaction.   The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

7.       In short, unless remedied, Level 3's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.   Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act.

9.       This Court has jurisdiction over the defendants because each defendant is either a

corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Level 3 is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Level 3 common stock.

12.     Defendant Level 3, a Delaware corporation, is a multinational telecommunications and internet service provider company.  Level 3's corporate headquarters are located at 1025 Eldorado Boulevard, Broomfield, Colorado 80021.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "LVLT."

13.     Defendant Storey has been President and CEO of the Company since April 2013, and a director of the Company since May 2013.

14.     Defendant James O. Ellis, Jr. ("Ellis") has been Chairman of the Board since May 2014 and a director of the Company since March 2005.

15.     Defendant Kevin P. Chilton ("Chilton") has been a director of the Company since April 2012.

16.     Defendant Steven T. Clontz ("Clontz") has been a director of the Company since April 2012.

17.     Defendant Irene M. Esteves ("Esteves") has been a director of the Company since October 2014.

18.     Defendant T. Michael Glenn ("Glenn") has been a director of the Company since October 2012.

19.     Defendant Spencer B. Hays ("Hays") has been a director of the Company since October 2014.

20.     Defendant Michael J. Mahoney ("Mahoney") has been a director of the Company since August 2007.

21.     Defendant Kevin W. Mooney ("Mooney") has been a director of the Company since October 2014.

22.     Defendant Peter Seah Lim Huat ("Seah") has been a director of the Company since October 2011.

23.     Defendant Peter van Oppen ("van Oppen") has been a director of the Company since March 2013.

24.     Defendants Storey, Ellis, Chilton, Clontz, Esteves, Glenn, Hays, Mahoney, Mooney, Seah and van Oppen are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

25.     CenturyLink is an American telecommunications company providing communications and data services to residential, business, governmental and wholesale customers in 37 states.  Its headquarters are located at 100 CenturyLink Drive, Monroe, Louisiana 71203.  CenturyLink's common stock is traded on the New York Stock Exchange under the ticker symbol "CTL."

26. Merger Sub 1 is a Delaware limited liability company and an indirect wholly-owned subsidiary of CenturyLink.

27. Merger Sub 2 is a Delaware limited liability company and an indirect wholly-owned subsidiary of CenturyLink.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the other public stockholders of Level 3 (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

29. This action is properly maintainable as a class action.

30. The Class is so numerous that joinder of all members is impracticable. As of October 28, 2016, there were approximately 359,917,389 shares of Level 3 common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

31. Questions of law and fact are common to the Class, including, among others, whether the defendants have violated Sections 14(a) and/or 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder by issuing the materially false and misleading Proxy to Level 3 stockholders.

32. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

33.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

34.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Company Background and its Poise for Growth

35.     Level 3 describes itself as a global communications provider for enterprise, government and carrier customers.  Anchored by extensive fiber networks on three continents and connected by undersea facilities, the Company's global services platform features deep metro assets reaching more than 500 markets in more than 60 countries.

36.     The Company has performed very well in recent months, reporting sustained increases in growth and improvements over its financial results during the prior fiscal year.

37.     On April 28, 2016, Level 3 issued a press release announcing its first quarter 2016 financial results.  For the quarter, the Company reported total revenue of $2.051 billion, compared to $2.030 billion on a pro forma basis year over year.  Level 3 enjoyed strong adjusted EBITDA growth of 15% on a pro forma basis to $710 million, and expanded adjusted EBITDA margins to 34.6%, from 30.5% year over year.  The Company grew its core network services revenue by 3.6% year over year, and generated strong free cash flow of $213 million. Commenting on the impressive financial results, defendant Storey stated:

Level 3's first quarter results demonstrate the benefit of our emphasis on profitable growth, as evident in our expanding margins and strong Free Cash Flow during the quarter. The continued evolution of our products and service capabilities matches the changing and complex needs of enterprises, positioning the company to become the premier provider of global communications services.

38.     On July 27, 2016, Level 3 issued a press release announcing its second quarter 2016 financial results.  For the quarter, the Company reported total revenue of $2.056 billion, compared to $2.037 billion on a modified basis year over year.  Level 3 enjoyed net income of $149 million, a strong improvement from a net loss of $13 million year over year.  The Company generated cash flows from operating activities of $631 million and free cash flow of $264 million.  Commenting on the robust financial results, defendant Storey stated:

With our focus on profitable growth combined with the strong operating leverage in the business, we continued to deliver expanded margins and improved profitability. We continue to invest in the business, remain confident in our ability to meet the networking needs of our enterprise customers and believe we can deliver stronger revenue growth in the future.

39.     On October 31, 2016, Level 3 issued a press release announcing its third quarter 2016 financial results.  The Company reported total revenue of $2.033 billion, compared to $2.037 billion on a modified basis year over year.  Level 3 enjoyed net income of $143 million, another strong improvement from net income of $1 million year over year.  The Company generated cash flows from operating activities of $645 million and free cash flow of $281 million.  Commenting on the financial results, defendant Storey stated:

We continued to expand margins and generated solid Free Cash Flow; however, we saw softer revenue growth in the quarter. We are focused on delivering the best customer experience and improving our execution in the near term.

**The Board Conducted an Insufficient Sale Process**

40.     The Board's decision to enter into the Proposed Transaction was the product of critical procedural defects, including (i) permitting defendant Storey, who from the outset was

8

expecting a position with the combined company, to lead negotiations with CenturyLink; and (ii) failing to conduct a market check.

41.     Communications between Level 3 and CenturyLink began in June 2016 when Glen F. Post, III ("Post"), CenturyLink's CEO and President, met with defendant Storey to discuss strategic options available to their companies.  On June 23, 2016, CenturyLink and Level 3 entered into a mutual nondisclosure agreement.

42.     On July 6, 2016, Sunit S. Patel ("Patel"), Level 3's Chief Financial Officer ("CFO") and Robert McCarthy ("McCarthy"), Level 3's Senior Vice President, Corporate Development, met with members of CenturyLink's management to discuss a strategic rationale for a potential transaction between the companies.  Throughout July and August 2016, members of CenturyLink and Level 3 management, including Patel, held numerous discussions regarding due diligence related to a potential transaction.

43.     On September 20, 2016, Post and defendant Storey met and Post indicated a potential acquisition of Level 3 by CenturyLink for merger consideration of approximately $58.00 to $60.00 per share.  At a subsequent meeting on October 5, 2016, defendant Storey indicated to Post that Level 3 would consider a price in the range of $68.00 to $70.00 per share. The next day, Post proposed an indicative value of $65.00 per share.  Defendant Storey noted that he would be willing to discuss a price higher than $65.00 per share, but did not reiterate the $68.00 to $70.00 per share range he discussed the day before.

44.     During the next few days, Post and defendant Storey held numerous discussions and defendant Storey indicated that a price of $66.50 per share, consisting of $26.50 in cash and the remaining portion in CenturyLink common stock, might be sufficient.

45.     On October 11, 2016, CenturyLink delivered a draft preliminary term sheet to Level 3 outlining a $66.50 per share purchase price, consisting of $26.50 in cash plus CenturyLink common stock valued at $40.00.  The term sheet also noted that CenturyLink would expand the board upon completion of a combination to include an unspecified number of Level 3 directors.

46.     Although the $66.50 per share proposal was $1.50 per share below the low-end of the $68.00 to $70.00 per share range defendant Storey indicated a week earlier, the Board determined not to run any market check or contact any potential purchasers regarding a sale of the Company.

47.     At the Board's October 21, 2016 meeting, the Board authorized Level 3 management to formally engage Citi to act as its financial advisor.  At the same meeting, the Board also authorized management to engage Lazard as a second financial advisor.

48.     On October 27, 2016, CenturyLink delivered to Level 3 a written offer to acquire the Company for $66.50 per share, consisting of $26.50 in cash and shares of CenturyLink common stock valued at $40.00, resulting in a proposed exchange ratio of 1.4184.  Following discussions, CenturyLink issued an updated written offer reflecting an exchange ratio of 1.4286 and proposed expanding the combined company's board of directors to include four directors of Level 3.

49.     Despite not having conducted even a preliminary market check to determine the adequacy of the Merger Consideration, the Board proceeded to finalize the Proposed Transaction with CenturyLink.  On October 30, 2016, Citi and Lazard each delivered their fairness opinions with respect to the Proposed Transaction, and the Board approved the Merger Agreement.  The next day, Level 3 and CenturyLink executed the Merger Agreement.

## Insiders' Interests in the Proposed Transaction

50.     CenturyLink and Level 3 insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of Level 3.

51.     Level 3 insiders stand to reap substantial financial benefits in connection with the liquidation of their illiquid holdings.  Pursuant to Section 1.8 of the Merger Agreement, each Level 3 outstanding restricted stock unit ("RSU") award granted prior to April 1, 2014 and each RSU award granted to a non-employee director of the Board will be cancelled in exchange for the Merger Consideration.  Furthermore, any Level 3 RSU awards granted to defendant Storey or his direct reports on or following October 31, 2016 will vest as to 50% of the award.

52.     In addition to the vesting of their equity awards, certain named executive officers will receive significant severance benefits in connection with the Proposed Transaction.  For example, upon termination of a RSU award holder's employment by Level 3, all of the holder's then unvested RSU awards will vest.  Defendant Storey *alone* stands to receive **over $33 million** in golden parachute compensation.  The following table summarizes the golden parachute compensation certain named executive officers are entitled to receive upon consummation of the Proposed Transaction:

### Golden Parachute Compensation

| Name | Cash ($)(1) | Equity ($)(2)(3) | Pension/ NQDC ($) | Perquisites/ Benefits ($)(4) | Tax Reimbursement ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| *Named Executive Officers(5)* | | | | | | | |
| Jeff K. Storey | 8,634,640 | 24,441,601 | — | 10,000 | — | — | 33,086,241 |
| Sunit S. Patel | 3,716,393 | 14,193,488 | — | 10,000 | — | — | 17,919,881 |
| Andrew E. Crouch | 3,712,829 | 6,749,378 | — | 10,000 | — | — | 10,472,207 |
| Laurinda Y. Pang | 2,032,667 | 6,719,464 | — | 10,000 | — | — | 8,762,131 |

53.     Instead of attempting to negotiate an agreement reflecting the best consideration reasonably available for the Level 3 stockholders they are duty-bound to serve, the Individual

Defendants disloyally placed their own interests first, and tailored the terms and conditions of the Proposed Transaction to meet their own needs and objectives. The Board's efforts to advance its members' personal interests at the expense of the Company's public stockholders have resulted in the inadequate Proposed Transaction being presented to the stockholders.

**The Proxy Contains Material Misstatements and/or Omissions**

54. On December 16, 2016, Level 3 filed the Proxy with the SEC and disseminated it to the Company's public stockholders in an attempt to convince stockholders to vote in favor of the Proposed Transaction. The Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed voting decision on the Proposed Transaction. Critically, the Board did not conduct a pre-signing market check to flesh out the value of Level 3 as an acquisition target, adding a heightened level of importance to the financial information currently omitted from the Proxy. Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information and/or provides them with materially misleading information concerning (i) Level 3 management's projections, utilized by Citi and Lazard in their financial analyses; (ii) the valuation analyses prepared by Citi and Lazard in connection with the rendering of their fairness opinions; and (iii) material information concerning the sale process leading up to the Proposed Transaction. Accordingly, Level 3 stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Level 3's Financial Projections*

55. The Proxy is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

56. Specifically, with respect to Level 3's management projections, the Proxy provides projections for non-GAAP metrics including, EBITDA, but fails to provide line item

projections for the metrics used to calculate EBITDA or otherwise reconciling the non-GAAP EBITDA projections to GAAP. *See* Proxy at 114-115. The omission of such projections renders the non-GAAP projections included in the Proxy materially incomplete and therefore misleading. The Proxy further fails to disclose for the Level 3 management projections, for the calendar years 2017 through 2021, the following items: (a) unlevered free cash flow and the definition of how unlevered free cash flow was calculated; (b) net income before income tax benefit; (c) total other income; (d) non-cash impairment charges; (e) depreciation and amortization; and (f) non-cash stock compensation expense.

57. The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a) from pages 113-115 of the Proxy:

**Certain Forecasts Prepared by Level 3**

Level 3 does not as a matter of course make public long-term forecasts as to future performance or other prospective financial information beyond the current fiscal year, and Level 3 is especially wary of making forecasts or projections for extended periods due to the unpredictability of the underlying assumptions and estimates. However, as part of the due diligence review of Level 3 in connection with the combination, Level 3's management prepared and provided to CenturyLink, as well as to Citi and Lazard, in connection with their respective evaluation of the fairness of the merger consideration, non-public, internal financial forecasts regarding Level 3's projected future operations for the 2017 through 2021 fiscal years. Level 3 has included below a summary of these forecasts for the purpose of providing stockholders and investors access to certain non-public information that was furnished to third parties and such information may not be appropriate for other purposes. These forecasts were also considered by the Level 3 Board for purposes of evaluating the combination. The Level 3 Board also considered non-public, financial forecasts prepared by CenturyLink regarding CenturyLink's anticipated future operations for the 2017 through 2021 fiscal years for purposes of evaluating CenturyLink and the combination. See " *The Combination and the Stock Issuance—Certain Forecasts Prepared by CenturyLink* " beginning on page 111 for more information about the forecasts prepared by CenturyLink.

The Level 3 internal financial forecasts were not prepared with a view toward public disclosure, nor were they prepared with a view toward compliance with published guidelines of the SEC, the guidelines established by the American Institute of Certified Public Accountants for preparation and presentation of financial forecasts or generally accepted accounting principles in the United States. KPMG LLP has not examined, compiled or performed any procedures with respect to the accompanying prospective financial information and, accordingly, KPMG LLP does not express an opinion or any other form of assurance with respect thereto. The KPMG LLP reports incorporated by reference in this joint proxy statement/prospectus relate only to Level 3's historical financial information. They do not extend to the prospective financial information and should not be read to do so. The summary of these internal financial forecasts included below is not being included to influence your decision whether to vote for the merger proposal, but because these internal financial forecasts were provided by Level 3 to CenturyLink, Citi and Lazard.

While presented with numeric specificity, these internal financial forecasts were based on numerous variables and assumptions (including, but not limited to, those related to industry performance and competition and general business, economic, market and financial conditions and additional matters specific to Level 3's businesses) that are inherently subjective and uncertain and are beyond the control of Level 3's management. Important factors that may affect actual results and cause these internal financial forecasts to not be achieved include, but are not limited to, risks and uncertainties relating to Level 3's business (including its ability to achieve strategic goals, objectives and targets over applicable periods), industry performance, general business and economic conditions and other factors described in the " *Risk Factors* " section of Level 3's Annual Report on Form 10-K, as updated by subsequent Quarterly Reports on Form 10-Q, all of which are filed with the SEC and incorporated by reference into this joint proxy statement/prospectus. These internal financial forecasts also reflect numerous variables, expectations and assumptions available at the time they were prepared as to certain business decisions that are subject to change. As a result, actual results may differ materially from those contained in these internal financial forecasts. Accordingly, there can be no assurance that the forecasted results summarized below will be realized.

The inclusion of a summary of these internal financial forecasts in this joint proxy statement/prospectus should not be regarded as an indication that any of Level 3, CenturyLink or their respective affiliates, advisors or representatives considered these internal financial forecasts to be predictive of actual future events, and these internal financial forecasts should not be relied upon as such nor should the information contained in these internal financial forecasts be considered appropriate for other purposes. None of Level 3, CenturyLink or their respective affiliates, advisors, officers, directors or representatives can give you any assurance that actual results will not differ materially from these internal financial forecasts, and none of them undertakes any obligation to

update or otherwise revise or reconcile these internal financial forecasts to reflect circumstances existing after the date these internal financial forecasts were generated or to reflect the occurrence of future events, even in the event that any or all of the assumptions underlying these forecasts are shown to be in error. Since the forecasts cover multiple years, such information by its nature becomes less meaningful and predictive with each successive year. Level 3 does not intend to make publicly available any update or other revision to these internal financial forecasts. None of Level 3 or its affiliates, advisors, officers, directors or representatives has made or makes any representation to any stockholder or other person regarding Level 3's ultimate performance compared to the information contained in these internal financial forecasts or that the forecasted results will be achieved. Level 3 has made no representation to CenturyLink, in the merger agreement or otherwise, concerning these internal financial forecasts. The below forecasts do not give effect to the combination. Level 3 urges all stockholders to review Level 3's most recent SEC filings for a description of Level 3's reported financial results.

| | 2017(E) | 2018(E) | 2019(E) | 2020(E) | 2021(E) |
|---|---|---|---|---|---|
| | | | (In millions) | | |
| Revenue | $ 8,437 | $ 8,831 | $ 9,249 | $ 9,683 | $ 10,137 |
| EBITDA (1) | | | | | (2) |
| | $ 2,877 | $ 3,092 | $ 3,323 | $ 3,566 | $ 3,794 |
| Capital Expenditures | $ 1,346 | $ 1,282 | $ 1,321 | $ 1,393 | $ 1,470 |

(1)   EBITDA is defined as net income (loss) before income tax (expense) benefit, total other income (expense), non-cash impairment charges and depreciation and amortization. Level 3 typically discloses Adjusted EBITDA which is defined as net income (loss) before income tax (expense) benefit, total other income (expense), non-cash impairment charges, depreciation and amortization and non-cash stock compensation expense.

(2)   In the financial forecasts provided to CenturyLink and its financial advisors, estimated EBITDA for 2021(E) was also indicated as $3,792.

### Material Omissions Concerning Citi's Financial Analyses

58.   The Proxy describes Citi's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Citi's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Level 3's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted

information, if disclosed, would significantly alter the total mix of information available to Level 3's stockholders.

59.     For example,  with respect to Citi's *Discounted Cash Flow Analysis* of Level 3 that was presented to the Board, the Proxy fails to disclose: (i) the unlevered free cash flow figures for the six months ended December 31, 2016 and the calendar years 2017 through 2021 used in the analysis; (ii) the individual inputs and assumptions utilized by Citi to derive the discount rate range of 7.25% to 8.25%; and (iii) Citi's estimate of normalized unlevered free cash flow for the Company that Citi applied perpetuity growth rates to in order to calculate the terminal value in the analysis..

60.     With respect to Citi's *Discounted Cash Flow* analyses of CenturyLink that were presented to the Board, the Proxy fails to disclose: (i) the unlevered free cash flow for the six months ended December 31, 2016 and the calendar years 2017 through 2020 used in the analyses; (ii) the individual inputs and assumptions utilized by Citi to derive the discount rate range of 5.50% to 6.50%; (iii) Citi's estimate of normalized unlevered free cash flow for CenturyLink that Citi applied perpetuity growth rates to in order to calculate the terminal value in the analysis; and (iv) the range of implied equity values per share that resulted from Citi's discounted cash flow analysis of CenturyLink using the CenturyLink Management Forecasts.

61.     With respect to Citi's *Selected Precedent Transactions* analysis that was presented to the Board, the Proxy fails to disclose the individual multiples for each of the selected transactions analyzed by Citi, as well as any benchmarking analyses Citi performed for Level 3 in relation to the target companies.

62.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)      from pages 91-92 of the Proxy:

***Level 3 Financial Analyses***

*Selected Precedent Transactions Analyses*. Citi analyzed certain publicly available information relating to the following selected precedent transactions, referred to as the selected precedent transactions, that Citi in its professional judgment considered relevant for purposes of its analysis as transactions in the enterprise / fiber telecommunications industry announced in the last 5 years having a transaction value of greater than $750 million:

- Zayo Group, LLC / AboveNet, Inc.

- Berkshire Partners LLC / Lightower Fiber Networks

- Berkshire Partners LLC / Sidera Networks, LLC

- Level 3 Communications, Inc. / tw telecom

- Lightower Fiber Networks / Fibertech Networks

For two of the five selected precedent transactions, Zayo Group, LLC / AboveNet, Inc. and Level 3 Communications, Inc. / tw telecom, Citi calculated the transaction value as a multiple of the target's forward estimated EBITDA without reduction for stock-based compensation expenses, referred to as the Pre-SBC EBITDA.

For each of the five selected precedent transactions, Citi calculated the transaction value as a multiple of the target's forward estimated EBITDA (or last twelve months (or LTM) EBITDA, if a forward estimate was not available), as applicable, reduced by stock-based compensation expenses, if applicable, referred to as the Post-SBC EBITDA.

The following table presents the results of this analysis:

| Metric | Transaction Value Multiple Range | |
|---|---|---|
| | **Low** | **High** |
| Transaction Value / Pre-SBC EBITDA | 9.3x | 13.1x |
| Transaction Value / Post-SBC EBITDA | 8.9x | 14.0x |

Citi used the multiples resulting from the selected precedent transactions to derive an implied equity value per share to Level 3. Citi applied the 9.3x to 13.1x range of transaction value / Pre-SBC EBITDA multiples to Level 3's estimated Pre-SBC EBITDA for calendar year 2017 (from the Level 3 Management Forecasts), which resulted in implied equity values per share of $50.58 to $82.06. Citi applied

the 8.9x to 14.0x range of transaction value / Post-SBC EBITDA multiples to Level 3's estimated Post-SBC EBITDA for calendar year 2017 (from the Level 3 Management Forecasts) which resulted in implied equity values per share of $43.39 to $83.58. Citi compared the ranges of implied equity values per share to the $66.86 implied per share merger consideration to Level 3 stockholders, assuming (i) cash consideration of $26.50 per share and (ii) an implied value of the stock consideration of $40.36 per share based on the 1.4286 per share exchange ratio and the closing price of CenturyLink common stock of $28.25 per share on October 26, 2016, the last day prior to market rumors of a transaction between Level 3 and CenturyLink, which we refer to as the Unaffected Date.

For informational purposes only, Citi also reviewed the EBITDA multiples and implied equity values to Level 3 of two additional transactions in the enterprise / fiber telecommunications industry (Crown Castle International Corp. / Sunesys and Level 3 Communications, Inc. / Global Crossing Limited) but in its professional judgment excluded such transactions from its selected precedent transaction analysis because such acquired companies were not, in Citi's professional judgment, sufficiently comparable to Level 3 for such purposes.

*Discounted Cash Flow Analysis*. Citi performed a discounted cash flow analysis of the Level 3 Management Forecasts to derive implied equity values per share of Level 3 as of June 30, 2016. Citi added the present values (in each case as of June 30, 2016) of (i) the unlevered free cash flow for the six months ended December 31, 2016 and the calendar years 2017 through 2021, (ii) the tax savings, which we refer to as the Level 3 NOL Tax Savings, associated with the use of the Level 3 NOLs, for the six months ended December 31, 2016 and the calendar years 2017 through 2031 (the last year in which Level 3 is estimated to have net operating losses available for use), and (iii) the terminal value of Level 3 at the end of the forecast period. For purposes of this analysis, the terminal value calculation applied perpetuity growth rates ranging from 2.0% to 3.0% to Citi's estimate of normalized unlevered free cash flow. Citi's present value calculations assumed discount rates of 7.25% to 8.25%, based upon an analysis of Level 3's weighted average cost of capital. Additionally, Citi treated Level 3's non-cash stock-based compensation expense as a cash expense in calculating Level 3's unlevered free cash flow for all periods. Citi then subtracted net debt (total debt minus cash and cash equivalents, as of June 30, 2016) and divided the range of equity values it derived by the number of fully diluted outstanding shares of Level 3 (as of September 30, 2016) to derive implied equity values per share of $41.29 to $66.80, as compared to the implied per share merger consideration of $66.86. Citi noted that the net present value of the Level 3 NOL Tax Savings contributed $6.77 to $7.03 per share to the range noted and that if the net present value of the Level 3 NOL Tax Savings were disregarded, the discounted cash flow analysis would result in a lower range of implied equity values per share.

(b)  from page 94 of the Proxy:

### CenturyLink Financial Analyses

\* \* \*

*Discounted Cash Flow Analysis.* Citi performed a discounted cash flow analysis of the Analyst Estimates for CenturyLink to derive implied equity values per share of CenturyLink as of June 30, 2016. Citi added the present values (in each case as of June 30, 2016) of (i) the unlevered free cash flow for the six months ended December 31, 2016 and the calendar years 2017 through 2020 and (ii) the terminal value of CenturyLink at the end of the forecast period. For purposes of this analysis, the terminal value calculation applied perpetuity growth rates ranging from (0.50)% to 0.50% to Citi's estimate of normalized unlevered free cash flow. Citi's present value calculations assumed discount rates of 5.50% to 6.50%, based upon an analysis of CenturyLink's weighted average cost of capital. Additionally, Citi treated CenturyLink's non-cash stock-based compensation expense as a cash expense in calculating CenturyLink's unlevered free cash flow for all periods. To derive the range of implied equity values, Citi then subtracted the amount of net debt of CenturyLink as of June 30, 2016, adjusted for the incurrence of additional debt and receipt of the proceeds thereof by CenturyLink in August 2016, and divided the range of equity values it derived by the number of fully diluted outstanding shares of CenturyLink (as of September 30, 2016), to derive a range of implied equity values per share of $23.52 to $43.90, as compared to the closing price of $28.25 per share on the Unaffected Date.

63.     Without such undisclosed information, Level 3 stockholders cannot evaluate for themselves whether the financial analyses performed by Citi were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Citi's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

### Material Omissions Concerning Lazard's Financial Analyses

64.     The Proxy describes Lazard's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Level 3's public stockholders are unable to fully understand

these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Level 3's stockholders.

65.    For example, Lazard performed a *Selected Comparable Company Multiples Analysis* of Level 3 and CenturyLink that was presented to the Board, yet the Proxy fails to disclose the individual multiples for each of the selected comparable companies analyzed by Lazard or, at the very least, the low and high multiples observed by Lazard and the Board, as well as any benchmarking analyses Lazard performed for Level 3 in relation to the selected public companies. The Proxy also fails to disclose how Lazard derived ranges of multiples of (i) 8.0x to 10.0x for enterprise value to estimated 2017 EBITDA of Level 3, and (ii) 5.0x to 6.0x for enterprise value to estimated 2017 EBITDA of CenturyLink.

66.    Similarly, Lazard performed *Discounted Cash Flow* analyses of Level 3 and CenturyLink that were presented to the Board, yet the Proxy fails to disclose (i) the estimated future cash flow of Level 3 and CenturyLink, for the fourth quarter of 2016 and the calendar years 2017 through 2021 and the fourth quarter of 2016 and the calendar years 2017 through 2020, respectively, used by Lazard in the analysis; (ii) the individual inputs and assumptions utilized by Lazard to derive the discount rate range for Level 3 of 6.5% to 8.0%; and (iii) the individual inputs and assumptions utilized by Lazard to derive the discount rate range for CenturyLink of 6.0% to 7.0%.

67.    With respect to Lazard's *Selected Precedent Transactions Multiples Analysis* that was presented to the Board, the Proxy fails to disclose the individual multiples for each of the

selected transactions analyzed by Lazard, as well as any benchmarking analyses Lazard performed for Level 3 in relation to the target companies.

68.    The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)    from pages 97-102 of the Proxy:

<u>Selected Comparable Company Multiples Analysis</u>

Lazard reviewed and analyzed certain financial information, valuation multiples and market trading data related to selected comparable publicly traded network infrastructure companies whose operations Lazard believed, based on its experience with companies in the network infrastructure industry and professional judgment, to be generally relevant in analyzing Level 3's and CenturyLink's operations for purposes of its analysis. Lazard compared such information of the selected comparable companies to the corresponding information for Level 3 and CenturyLink.

The selected group of companies used in this analysis with respect to Level 3, or the Level 3 comparable companies, was as follows:

- Cogent Communications Holdings, Inc.; and

- Zayo Group Holdings, Inc.

In addition, we also considered the multiples and growth rates of the following related businesses: Comcast Corporation, Charter Communications, Inc., AT&T Inc., Verizon Communications, Inc., Digital Realty Trust, Inc., DuPont Fabros Technology, Inc., CoreSite Realty Corporation, QTS Realty Trust, Inc., Equinix, Inc., and CyrusOne Inc.

The selected group of companies used in this analysis with respect to CenturyLink, or the CenturyLink comparable companies, was as follows:

- Frontier Communications Corporation;

- Cincinnati Bell Inc.;

- Consolidated Communications Holdings, Inc.;

- FairPoint Communications, Inc.;

- AT&T Inc.; and

- •    Verizon Communications, Inc.

In addition, as part of the analysis with respect to CenturyLink, we also analyzed the pro forma metrics resulting from the combination of Communication Sales & Leasing, Inc. and Windstream Services, LLC.

Lazard selected the companies reviewed in this analysis because, among other things, the Level 3 comparable companies and the CenturyLink comparable companies operate businesses similar to the businesses of Level 3 and CenturyLink, respectively. However, no selected company is identical to Level 3 or CenturyLink. Accordingly, Lazard believes that purely quantitative analyses are not, in isolation, determinative in the context of the transaction and that qualitative judgments concerning differences between the business, financial and operating characteristics and prospects of each of Level 3 and CenturyLink and the Level 3 comparable companies and the CenturyLink comparable companies, respectively, that could affect the public trading values of each company are also relevant.

For each of the selected companies, Lazard calculated and compared the ratio of such company's enterprise value, which Lazard calculated as the market capitalization of each company (based on each company's closing share price as of October 26, 2016 and fully diluted share count as of June 30, 2016 (or the applicable date specified in its annual report on Form 10-K or quarterly report on Form 10-Q), as applicable, for the calendar year or quarter ended June 30, 2016, respectively), plus debt, non-controlling interest and preferred or preference stock, less cash, cash equivalents and marketable securities and appropriately adjusted for the net present value of net operating losses, if any, in each case, as of June 30, 2016, to its calendar year 2017 estimated earnings before interest, taxes, depreciation and amortization, or EBITDA.

The 2017 EBITDA estimates for each of the Level 3 and the CenturyLink comparable companies used by Lazard in its analysis were based on Wall Street research, which represents publicly available consensus estimates. The 2017 EBITDA estimate used for Level 3 was based on the Level 3 management plan and the 2017 EBITDA estimate for CenturyLink was based on Wall Street estimates as adjusted by Level 3 management.

Based on Lazard's analysis of the relevant metrics for each of the Level 3 comparable companies, as well as its professional judgment and experience, Lazard derived ranges of multiples of:

- •    *8.0x to 10.0x for enterprise value to estimated 2017 EBITDA of Level 3.*

Based on Lazard's analysis of the relevant metrics for each of the CenturyLink comparable companies, as well as its professional judgment and experience, Lazard derived ranges of multiples of:

- *5.0x to 6.0x for enterprise value to estimated 2017 EBITDA of CenturyLink.* Lazard applied each such range of multiples for the Level 3 comparable companies and the CenturyLink comparable companies to the relevant financial statistics of Level 3 and CenturyLink, respectively, as reflected in the Level 3 management plan for Level 3, and the CenturyLink Wall Street estimates as adjusted by Level 3 management for CenturyLink.

This analysis resulted in an implied price per share range for shares of Level 3 common stock and CenturyLink common stock and implied exchange ratios, as set forth below:

| Implied Level 3 Price Per Share Range | Implied CenturyLink Price Per Share Range | Implied Exchange Ratios | | |
|---|---|---|---|---|
| $44.49 - $60.21 | $23.12 - $34.89 | | Low | High |
| | | LVLT/Share | $44.49 | $60.21 |
| | | Less: Cash/Share | ($26.50) | ($26.50) |
| | | Stock/Share | $17.99 | $33.71 |
| | | CTL/Share | $23.12 | $34.89 |
| | | Implied Exchange Ratio | 0.52x | 1.46x |

Lazard also calculated an implied exchange ratio reference range based on the selected comparable company multiples analysis described above by dividing the low end of the implied Level 3 price per share range resulting from the selected comparable company multiples analysis described above (less $26.50 per share in cash) by the high end of the implied CenturyLink price per share range resulting from the selected comparable company multiples analysis described above and by dividing the high end of the implied Level 3 price per share range resulting from the selected comparable company multiples analysis described above (less $26.50 per share in cash) by the low end of the implied CenturyLink price per share range resulting from the selected comparable company multiples analysis described above. This analysis indicated an implied exchange ratio range of 0.52x to 1.46x and an implied pro forma ownership range for the Level 3 stockholders of 25.6% to 49.3%. The exchange ratio provided for in the merger agreement is 1.4286x resulting in a pro forma ownership by Level 3 stockholders of 49%.

Discounted Cash Flow Analysis

Lazard performed a discounted cash flow analysis of each of Level 3 and CenturyLink, which is a valuation methodology used to derive a valuation of a company by calculating the present value of its estimated future cash flows.

"Future cash flows" refers to projected unlevered free cash flows of a company. "Present value" refers to the current value of future cash flows or amounts and is obtained by discounting those future cash flows or amounts by a discount rate. Lazard calculated the discounted cash flow value for each of Level 3 and CenturyLink as the sum of the net present value, as of September 30, 2016, which we refer to as the discount date in this joint proxy statement/prospectus, of each of:

- the estimated future cash flows that the applicable company will generate for Q4 2016 and each of the following years through 2021 with respect to Level 3 and 2020 with respect to CenturyLink; and

- the estimated terminal value beyond 2021 with respect to Level 3 and beyond 2020 with respect to CenturyLink.

The estimated future cash flow for Level 3 and CenturyLink was calculated by Lazard based on the Level 3 management plan and the CenturyLink Wall Street estimates as adjusted by Level 3 management, respectively, as summarized above. For its discounted cash flow calculations for both companies, Lazard applied discount rates ranging from 6.5% to 8.0% for Level 3 and 6.0% to 7.0% for CenturyLink. Such discount rates were based on Lazard's estimated range of the weighted average cost of capital of each company.

The terminal value of the companies was calculated applying terminal year EBITDA multiples ranging from 8.0x to 10.0x to Level 3's projected terminal year EBITDA of $3.794 billion and 5.0x to 7.0x to CenturyLink's projected terminal year EBITDA of $6.391 billion. The exit terminal year EBITDA multiples for Level 3 and CenturyLink were selected by Lazard by reference to enterprise value to EBITDA trading multiples calculated for Level 3 and CenturyLink, as well as the enterprise value to EBITDA trading multiples of the Level 3 comparable companies and the CenturyLink comparable companies, respectively. In addition, Lazard considered the implied perpetuity growth rates suggested by the exit multiple ranges for Level 3 (1.5%-3.9%) and CenturyLink (-0.6%-2.2%). As part of the total implied equity value calculated for Level 3 and CenturyLink, Lazard calculated and deducted from enterprise value the sum of the book value of the outstanding financial debt less cash and cash equivalents.

This analysis resulted in an implied price per share range for shares of Level 3 common stock and CenturyLink common stock and implied exchange ratios, as set forth below:

| Implied Level 3 Price Per Share Range | Implied CenturyLink Price Per Share Range | Implied Exchange Ratios | | |
| --- | --- | --- | --- | --- |
| | | | Low | High |
| $54.64 - $74.99 | $22.58 - $43.24 | LVLT/Share | $54.64 | $74.99 |

|  |  |  |
|---|---|---|
| Less: Cash/Share | ($26.50) | ($26.50) |
| Stock/Share | $28.14 | $48.49 |
| CTL/Share | $22.58 | $43.24 |
| Implied Exchange Ratio | 0.65x | 2.15x |

* * *

Selected Precedent Transactions Multiples Analysis

Lazard reviewed and analyzed selected precedent merger and acquisition transactions involving companies in the network infrastructure industry it viewed as generally relevant in analyzing Level 3. In performing this analysis, Lazard reviewed certain financial information and transaction multiples relating to the companies involved in such selected transactions and compared such information to the corresponding information for Level 3. Specifically, Lazard selected and reviewed eleven merger and acquisition transactions announced since August 2010 involving companies in the network infrastructure industry for which sufficient public information was available.

The selected group of transactions reviewed in this analysis was as follows:

| Announcement Date | Acquirer | Target |
|---|---|---|
| August 26, 2010 | Court Square Capital Partners, L.P. | Fibertech Networks, LLC |
| April 11, 2011 | Level 3 Communications, Inc. | Global Crossing Limited |
| October 7, 2011 | Zayo Group Holdings, Inc. | 360networks Holdings (USA), Inc. |
| March 19, 2012 | Zayo Group Holdings, Inc. | AboveNet, Inc. |
| December 27, 2012 | Berkshire Partners LLC | Lightower Fiber Networks LLC |
| December 27, 2012 | Berkshire Partners LLC | Sidera Networks, Inc. |
| October 7, 2013 | Time Warner Cable Inc. | DukeNet Communications, LLC |
| June 16, 2014 | Level 3 Communications, Inc. | tw telecom inc. |
| April 27, 2015 | Lightower Fiber Networks LLC | Fibertech Networks, LLC |
| April 30, 2015 | Crown Castle International Corp. | Quanta Fiber Networks, Inc. (Sunesys) |
| November 23, 2015 | Zayo Group Holdings, Inc. | Allstream, Inc. |

To the extent publicly available, Lazard reviewed, among other things, the forward and trailing EBITDA multiples of each of the target companies implied by the selected transactions by comparing the relevant target company's total enterprise value (based on the acquisition price) to its forward and trailing EBITDA at the time of the transaction. Estimated EBITDA amounts for the target companies were based on company filings, Wall Street estimates or other publicly available financial information.

Based on an analysis of the relevant metrics for each of the transactions, Level 3 management's forecasted growth, as well as its professional judgment and

experience, Lazard applied a range of 10.0x—12.0x to the last twelve months EBITDA of Level 3.

Based on the applied range described above, Lazard calculated the implied price per share range for shares of Level 3 common stock and the implied exchange ratios based on CenturyLink's closing price on October 26, 2016, as set forth below:

| Implied Level 3 Price Per Share Range | CenturyLink Closing Price (10/26/2016) | Implied Exchange Ratios | | |
|---|---|---|---|---|
| | | | Low | High |
| $53.99 - $68.47 | $28.25 | LVLT/Share | $53.99 | $68.47 |
| | | Less: Cash/Share | ($26.50) | ($26.50) |
| | | Stock/Share | $27.49 | $41.97 |
| | | CTL/Share | $28.25 | $28.25 |
| | | Implied Exchange Ratio | 0.97x | 1.49x |

Lazard also calculated an implied exchange ratio reference range based on the selected precedent transaction analysis described above by dividing the low end of the implied Level 3 price per share range resulting from the precedent transaction analysis described above (less $26.50 per share in cash) by the closing price of CenturyLink common stock on October 26, 2016 and by dividing the high end of the implied Level 3 price per share range resulting from the precedent transaction analysis described above (less $26.50 per share in cash) by the closing price of CenturyLink common stock on October 26, 2016. This analysis indicated an implied exchange ratio range of 0.97x to 1.49x and an implied pro forma ownership range for the Level 3 stockholders of 39.4% to 49.8%. The exchange ratio provided for in the merger agreement is 1.4286x resulting in a pro forma ownership by Level 3 stockholders of 49%.

69.    Without such undisclosed information, Level 3 stockholders cannot evaluate for themselves whether the financial analyses performed by Lazard were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Lazard's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

***Material Omissions Concerning the Flawed Sale Process***

70.     The Proxy also fails to disclose or misstates material information relating to the sale process leading up to the Proposed Transaction, including:

(a)     The timing and nature of all communications regarding future employment or directorship of Level 3's officers and directors, including, but not limited to, defendant Storey and Patel, as well as who participated in all such discussions; and

(b)     With respect to Lazard's advisory work for CenturyLink regarding strategic combinations, the Proxy states on page 103 that "representatives of Lazard's financial advisory business, including certain members of the team that would be providing services to Level 3, had met with representatives of CenturyLink and discussed matters that included, among other things, potential strategic combinations, including with Level 3. . . ."  The Proxy fails to disclose (i) the dates of the meetings held between Lazard and CenturyLink, and (ii) whether Lazard provided any price terms to CenturyLink for an acquisition of Level 3 by CenturyLink and the details thereof.

71.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 52-53 of the Proxy:

CenturyLink's draft term sheet also contemplated, among other things, . . . that CenturyLink would expand the CenturyLink Board upon completion of the proposed combination to include an unspecified number of Level 3 directors.

* * *

Following this discussion, CenturyLink sent a revised draft of the term sheet to Level 3 that proposed consideration of $26.50 in cash and 1.429 CenturyLink shares subject to confirmation prior to signing, eliminated the force the vote and financing termination fee provisions and proposed adding three Level 3 directors to the combined company board, but not including any reverse break-up fee for failure to obtain regulatory approvals. The revised term sheet also contemplated that Level 3's largest shareholder would enter into a voting agreement to support the transaction.

(b)      from page 102 of the Proxy:

Upon completion of the combination, R. Stewart Ewing, Jr., CenturyLink's current Executive Vice President, Chief Financial Officer and Assistant Secretary, plans to retire. Following Mr. Ewing's retirement, Mr. Sunit Patel, Executive Vice President and Chief Financial Officer of Level 3, will serve as Chief Financial Officer of the combined company. Following the completion of the combination, the members of the CenturyLink Board are expected to continue as directors of the combined company and the executive officers of CenturyLink, other than Mr. Ewing, are expected to continue to be executive officers of the combined company. Decisions on executive officers are subject to change as the parties complete integration planning and as decisions are made concerning the management structure of the company.

(c)      from page 103 of the Proxy:

Prior to being engaged by Level 3 to act as financial advisor in connection with the transaction, Lazard disclosed to Level 3 Board that during the preceding year, representatives of Lazard's financial advisory business, including certain members of the team that would be providing services to Level 3, had met with representatives of CenturyLink and discussed matters that included, among other things, potential strategic combinations, including with Level 3, among others. Lazard informed the Level 3 Board that these meetings were not pursuant to, and did not result in, an engagement by CenturyLink of Lazard, and that the materials prepared for those meetings were based solely on publicly available information. Lazard may in the future provide services to Level 3 or CenturyLink for which it may receive compensation.

72.      Defendants' failure to provide Level 3 stockholders with the foregoing material information renders the statements in the "Background of the Combination" and "Level 3's Reasons for the Combination and Recommendation of the Combination by the Level 3 Board" sections of the Proxy false and/or materially misleading and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.   The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy.   Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction,

Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

73.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

75.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisors, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

76.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

77.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

78. Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

79. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80. The Individual Defendants acted as controlling persons of Level 3 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Level 3 and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

81. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

82. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.

They were, thus, directly involved in the making of this document.

83.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

84.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

85.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of defendants' conduct, Level 3's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.


Dated: January 17, 2017                           Respectfully submitted,

                                                  /s/ Richard A. Acocelli
                                                  Richard A. Acocelli
                                                  **WEISSLAW LLP**
                                                  1500 Broadway, 16th Floor
                                                  New York, NY 10036
                                                  Telephone: (212) 682-3025
                                                  Facsimile: (212) 682-3010
                                                  Email: racocelli@weisslawllp.com

                                                  *Attorneys for Plaintiff*