**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-00155

JAMES AMEDEE, On Behalf of Himself and All Others Similarly Situated,

      Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, INC.,
JEFF K. STOREY,
JAMES O. ELLIS, JR.,
KEVIN P. CHILTON,
STEVEN T. CLONTZ,
IRENE M. ESTEVES,
T. MICHAEL GLENN,
SPENCER B. HAYS,
MICHAEL J. MAHONEY,
KEVIN W. MOONEY,
PETER SEAH LIM HUAT, and
PETER VAN OPPEN,

      Defendants.

---

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND BRIEF IN SUPPORT**

---

# TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ........................................................................................ 2

II.   TERMS OF THE SETTLEMENT ............................................................................... 4

III.  THE PROPOSED SETTLEMENT WARRANTS
      PRELIMINARY APPROVAL ...................................................................................... 5

IV.   CLASS CERTIFICATION FOR PURPOSES OF
      SETTLEMENT IS PROPER ...................................................................................... 10

   A.   Rule 23(a)(1): Numerosity ..................................................................................... 11

   B.   Rule 23(a)(2): Commonality .................................................................................. 12

   C.   Rule 23(a)(3): Typicality ........................................................................................ 13

   D.   Rule 23(a)(4): Adequacy of Representation.......................................................... 14

   E.   Certification Is Maintainable Under Federal Rule of
        Civil Procedure 23(b)(2) ....................................................................................... 15

   F.   Plaintiff's Counsel Should Be Appointed Class Counsel ......................................... 166

V.    PROPOSED SCHEDULE OF EVENTS ................................................................... 16

VI.   CONCLUSION ......................................................................................................... 188

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997) ....................................................................................................... 11

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.,*
   167 F. Supp. 2d 1216 (D. Colo. 2001) ..................................................................... 5

*Fletcher v. A. J. Indus., Inc.,*
   266 Cal. App. 2d 313 (1968) ..................................................................................... 8

*Hershey v. ExxonMobil Oil Corp.,*
   No. 07-1300-JTM,
   2012 U.S. Dist. LEXIS 153803 (D. Kan. Oct. 26, 2012) ........................................ 5

*In re Corrugated Container Antitrust Litig.,*
   643 F.2d 195 (5th Cir. 1981) ................................................................................... 14

*In re Crocs, Inc. Sec. Litig.,*
   No. 07-cv-02351-PAB-KLM,
   2013 U.S. Dist. LEXIS 122593 (D. Colo. Aug. 28, 2013) ............................... *passim*

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
   No. MDL 901,
   1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ....................................... 8

*In re Initial Pub. Offering Sec. Litig.,*
   227 F.R.D. 65 (S.D.N.Y. 2004) ............................................................................... 13

*In re Medical X-Ray Film Antitrust Litig.,*
   No. CV 93-5904(CPS),
   1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997) ....................................... 6

*In re Motor Fuel Temperature Sales Practices Litig.,*
   286 F.R.D. 488 (D. Kan. 2012) ................................................................................ 6

*In re Thornburg Mortg., Inc.,*
   912 F. Supp. 2d 1178 (D.N.M. 2012) .............................................................. *passim*

*Lane v. Page,*
   862 F. Supp. 2d 1182 (D.N.M. 2012) ...................................................................... 7

*Lucas v. Kmart Corp.,*
   234 F.R.D. 688 (D. Colo. 2002) ............................................................................... 7

*McEwan v. Digitran Sys.,*
    160 F.R.D. 631 (D. Utah 1994) ................................................................ 12

*Mills v. Elec. Auto-Lite Co.,*
    396 U.S. 375 (1970) ................................................................................. 8

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ........................................................... 7, 9-10

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
    314 F.3d 1180 (10th Cir. 2002) ............................................................. 14

*Stroud v. Grace,*
    606 A.2d 75 (Del. 1992) ........................................................................ 8

*Turner v. Bernstein,*
    768 A.2d 24 (Del. Ch. 2000) ................................................................ 15

*Weinberger v. Rio Grande Indus., Inc.,*
    519 A.2d 116 (Del. Ch. 1986) ................................................................ 8

*Wilkerson v. Martin Marietta Corp.,*
    171 F.R.D. 273 (D. Colo. 1997) ............................................................. 5

## Statutes, Rules & Authorities

Federal Rules of Civil Procedure
    Rule 23(a) .................................................................................... *passim*
    Rule 23(b) ................................................................................... 11, 15
    Rule 23(g) ........................................................................................ 16

*Manual for Complex Litigation* (4th ed. 2004),
    §13.14 ............................................................................................. 5
    §30.41 ............................................................................................. 6

## MOTION

Plaintiff James Amedee ("Plaintiff") hereby moves the Court for entry of the Order Preliminarily Approving Settlement ("Preliminary Approval Order"), submitted herewith. The Preliminary Approval Order will: (a) preliminarily approve the settlement set forth in the Stipulation of Settlement, dated March 27, 2018 ("Stipulation" or "Settlement")[1]; (b) certify a settlement class consisting of any and all record or beneficial holders of Level 3 Communications, Inc. ("Level 3" or the "Company") stock (other than Defendants, their immediate families, heirs and assigns), their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, at any time from and including October 27, 2016 through and including November 1, 2017 (the "Class" composed of the "Class Members"); (c) direct mailing of the Notice of Pendency and Proposed Settlement of Class Action and Hearing ("Notice"); and (d) schedule a hearing at which the Court will consider final approval of the Settlement set forth in the Stipulation.[2]

---

[1] Unless otherwise defined herein, all capitalized terms have the same meanings ascribed to them in the Stipulation, filed herewith as Exhibit 1 to the Declaration of Richard A. Acocelli in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Acocelli Decl.").

[2] While all Parties seek entry of the Preliminary Approval Order, this Memorandum is submitted by Plaintiff and, accordingly, does not represent the views of Defendants. Defendants deny Plaintiff's claims and reserve all rights to oppose or object to the amount of fees and expenses that Plaintiff and Plaintiff's Counsel will seek if the Parties are unable to reach agreement on an amount of Plaintiff's reasonable attorneys' fees and expenses.

As explained herein, Plaintiff's Counsel are satisfied that the proposed Settlement is in the best interests of the Class and respectfully request the Court to preliminarily approve the Settlement and enter the Preliminary Approval Order as submitted.

## CERTIFICATION OF COMPLIANCE

Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiff has conferred with counsel for Defendants regarding this Motion and Defendants have conveyed that they consent to the relief sought.

## BRIEF IN SUPPORT

## I.    FACTUAL BACKGROUND

On October 31, 2016, Level 3 and CenturyLink, Inc. ("CenturyLink") publicly disclosed that they had entered into an Agreement and Plan of Merger, dated as of October 31, 2016 (the "Merger Agreement"), pursuant to which CenturyLink (via certain wholly-owned subsidiaries) would acquire Level 3 and Level 3 shareholders would receive $26.50 per share in cash and a fixed exchange ratio of 1.4286 shares of CenturyLink stock for each Level 3 share they own (the "Merger").

On December 16, 2016, Level 3 and CenturyLink filed a joint preliminary proxy statement/prospectus included in a registration statement on Form S-4 with the SEC (the "Preliminary Proxy") disclosing the recommendation of each company's board that each company's shareholders vote in favor of the Merger and making various disclosures to shareholders regarding the shareholder votes.

On January 17, 2017, Plaintiff commenced the Action alleging that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 14a-9 promulgated thereunder because the Preliminary Proxy failed to disclose material

information relating to the Merger.  Plaintiff's complaint (the "Complaint") sought, among other things, injunctive relief prohibiting Defendants from consummating the Merger, and other forms of equitable relief.

Plaintiff and his counsel conducted an investigation and discovery regarding his claims for injunctive and declaratory relief and engaged in substantial arm's- length negotiations with Defendants regarding a possible resolution of the Action.  On February 9, 2017, the Parties reached an agreement-in-principle on the structure of a settlement of the Action, which was set forth in a Memorandum of Understanding (the "MOU") dated February 9, 2017.  Pursuant to the MOU, Defendants agreed that Level 3 would disclose certain additional information concerning the Merger (the "Supplemental Disclosures") to Level 3 shareholders in advance of the shareholder vote.

On February 13, 2017, Level 3 and CenturyLink filed a joint definitive proxy statement/prospectus included in a registration statement on Form S-4 with the SEC (the "Definitive Proxy"), which included, among other things, the Supplemental Disclosures.

On March 16, 2017, at a special meeting of the shareholders of Level 3, the holders of approximately 81.2 percent of Level 3's outstanding shares of common stock, and more than 98.8 percent of the votes cast, were voted in favor of approving the Merger.

Following shareholder approval, and pursuant to the MOU, Plaintiff's Counsel conducted further investigation to confirm the potential settlement terms are fair and reasonable to Level 3 shareholders, including, among other things, reviewing publicly available documents related to the Merger, non-public documents produced to Plaintiff by Defendants, and taking the depositions of Jeff K. Storey, Level 3's President and Chief Executive Officer, on June 15, 2017

and Roseanne Kurmaniak, a managing director at Citigroup Global Markets Inc., Level 3's financial advisor on August 17, 2017. On November 1, 2017, the Merger closed.

The Stipulation was executed on March 27, 2018.

The Settlement on the terms set forth in the Stipulation reflects the results of the Parties' negotiations and the terms of the MOU. An agreement-in-principle was only reached after arm's-length negotiations between the Parties who were all represented by counsel with extensive experience and expertise in shareholder class action litigation. During the negotiations, all Parties had a clear view of the strengths and weaknesses of their respective claims and defenses. Plaintiff and his counsel have concluded that the Supplemental Disclosures provided Level 3 shareholders with information sufficient to make a fully informed decision on the Merger and provided material benefits to Class Members. As a result, Plaintiff and his counsel believe that the Settlement is in the best interest of the Class.

## II.    TERMS OF THE SETTLEMENT

As a direct result of the prosecution of the Action and the extensive negotiations between the Parties, Level 3 made additional disclosures concerning the Merger in the Definitive Proxy, filed with the SEC on February 13, 2017. *See* Stipulation, ¶¶ L, 1. These disclosures included information regarding, among other things: (1) Level 3 management's projections, utilized by Citigroup Global Markets Inc. ("Citi") and Lazard Frères & Co. LLC ("Lazard") in their financial analyses, (2) the valuation analyses prepared by Citi and Lazard in connection with the rendering of their fairness opinions, and (3) material information concerning the sale process leading up to the Merger, including employment discussions between Level 3 and CenturyLink. *See* Supplemental Disclosures, attached as Exhibit A to the Stipulation.

In addition, the Settlement provides that Plaintiff's Counsel reserve the right to seek an award of attorneys' fees and expenses and Defendants reserve the right to oppose the amount of any such request, but acknowledge that Plaintiff's Counsel is entitled to seek an award of reasonable attorneys' fees and reimbursement of expenses based upon the benefit that this Settlement confers upon the Class in connection with the Settlement.

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The law favors and encourages settlement of controversies. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997); *Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001). This is especially true in complex class actions such as this, "'where substantial judicial resources can be conserved by avoiding formal litigation.'" *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 U.S. Dist. LEXIS 153803, at *4 (D. Kan. Oct. 26, 2012) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010)); *Big O Tires*, 167 F. Supp. 2d at 1229 ("Particularly in complex cases the litigants should be encouraged to determine their respective rights between themselves.").[3]

Although approval of a class action settlement is ultimately a two-stage process, at the preliminary approval stage, the court at most need only determine "'that there is . . . "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 U.S. Dist. LEXIS 122593, at *10 (D. Colo. Aug. 28, 2013); *Manual for Complex Litigation* §13.14, at 173 (4th ed. 2004) ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to

---

[3] Internal citations are omitted throughout unless otherwise noted.

warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."). Thus, preliminary approval is merited where:

> the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."

*In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012). In other words, "preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlement[]." *In re Medical X-Ray Film Antitrust Litig.*, No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997). Applying this standard, Plaintiff respectfully submits that the preliminary approval of the Settlement is warranted.

Plaintiff is now requesting that this Court take the first step in that process. The Court need only conclude that the settlement with Defendants on the agreed upon terms is within the range of possible approval to preliminarily approve the Settlement for the purposes of providing notice and holding a future fairness hearing.[4] Plaintiff's Counsel believe that the Settlement achieved in the Action easily meets the standards for preliminary approval.

---

[4] As the *Manual for Complex Litigation* explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation, supra*, at §30.41. Without question, the settlement here meets, indeed exceeds, these criteria.

Here, the terms of the Settlement were fairly, honestly, and aggressively negotiated by all parties and substantial non-monetary benefits were obtained for Level 3's shareholders that address the claims and relief sought in the Action. Indeed, the Settlement is presumptively fair because it was reached through arm's-length negotiations between experienced counsel after sufficient litigation and discovery. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2002) (a "'"presumption of fairness, adequacy, and reasonableness attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel"'"); *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012) ("Class Counsel are both skilled and experienced, and used those skills and experience for the benefit of the class.").

Moreover, reference to factors considered by the courts in granting final approval of class action settlements lend support to the proposition that the Settlement is well within the range of possible approval. First, the terms of the Settlement are the product of arm's-length negotiations between the parties and were at all times hard-fought. Second, Plaintiff, through his counsel, having carefully considered and evaluated, inter alia, the relevant legal authorities and evidence adduced to date, the likelihood of prevailing on those claims, the risk, expense, and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Plaintiff did prevail at trial, has concluded that the Settlement is clearly fair, reasonable, and adequate and in the best interest of the Class.[5]  Plaintiff's Counsel have significant experience in complex class action litigation and have negotiated numerous other class action settlements throughout the

---

[5] *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.").

country.  It is well established that significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of the class.  *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 U.S. Dist. LEXIS 14337, at *12 (C.D. Cal. June 10, 1992) (finding belief of counsel that proposed settlement represented the most beneficial result for the class is a compelling factor in approving the settlement).

The Settlement achieved substantial non-monetary benefits for Class Members that address Plaintiff's claims.  It is a fundamental tenet of corporate law that shareholders are entitled to be fully informed of all material facts concerning transactions requiring their approval. *See, e.g., Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) (it is a "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action").  Full and complete disclosure in the context of securing shareholder approval requires that all material information be given to shareholders at the time they are being asked to vote.  *See, e.g., Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 126 (Del. Ch. 1986).  In *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970), the United States Supreme Court observed that "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action]" and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute." *Id*. at 395-96.  Benefits such as those obtained in the proposed settlement have frequently provided the basis for the resolution of shareholders' claims in courts nationwide.  *See, e.g., Fletcher v. A. J.*

*Indus., Inc.*, 266 Cal. App. 2d 313, 324-25 (1968) (stockholder suits where non-pecuniary benefits are obtained serve an important consideration of public policy).

The benefits of this Settlement should also be balanced against the expense and delay of litigating numerous pre-trial disputes. While Plaintiff believes that his claims have substantial merit, Defendants' liability was by no means a foregone conclusion. The outcome of the case was uncertain and, had it proceeded, Defendants would argue that they exercised valid "business judgment" with respect to all aspects of the Merger Agreement. The presumption of the business judgment rule favors Defendants and creates a significant risk that Plaintiff would not have prevailed. The likelihood of obtaining an injunction prior to the deadline for shareholders to make a decision with respect to their shares was uncertain given the requirement to demonstrate a significant likelihood of success on the merits and irreparable injury. Moreover, given the time constraints on Level 3's shareholders with respect to their shares, Plaintiff may not have been able to present the Court with a complete factual record in support of a motion for injunctive relief, thus further reducing the chances of success. Despite these risks, the Settlement has provided shareholders with significant material information that enhanced each shareholder's ability to make a fully-informed decision with respect to their Level 3 shares. A balancing of these considerations supports approval of the Settlement.

In summary, although Plaintiff believes that his case is meritorious, the benefits of the Settlement address the claims and relief sought while eliminating the risk, expense, and uncertainty of continued litigation. An evaluation of the benefits of the Settlement must be tempered by the recognition that any compromise involves concessions on the part of the settling parties. Indeed, the very essence of a settlement agreement is compromise, "'a yielding of

absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Id*. Accordingly, the fact that the Class potentially could have achieved a better recovery after trial does not preclude the Court from finding that the Settlement is within a "range of reasonableness" that is appropriate for approval.

While the Parties believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked to permit notice of the terms of the Settlement to be given to the Class and schedule a hearing to consider any views by Class Members of the fairness of the Settlement. Given the complexities of the dispute, and the uncertainties inherent in such complex litigation, the Settlement eliminates the risk that the Action would be dismissed without any benefits or relief to the Class.

## IV.    CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT IS PROPER

As part of the Settlement, the Parties have agreed to the certification of a Class defined as any and all record or beneficial holders of Level 3 stock (other than Defendants, their immediate families, heirs and assigns), their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, at any time from and including October 27, 2016 through and including November 1, 2017, who are alleged to be harmed by Defendants as described in the Action.

Under Federal Rule of Civil Procedure 23(a), a class may be certified if: (i) it is so numerous that joinder of all members is impracticable (numerosity); (ii) there are questions of law and fact common to  the class (commonality); (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (iv) the representative parties will fairly and adequately protect the interests of the class (adequacy). *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).  The proposed class additionally must fall within one of the three categories of class actions defined in Federal Rule of Civil Procedure 23(b).  *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *12-*13.  Under these standards, certification of the proposed Class is appropriate.

### A.    Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable.  Joinder need not be impossible; instead, the rule only requires that the hardship or inconvenience of joining all members makes use of the class action device appropriate.  *In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d 1178, 1221-22 (D.N.M. 2012).  Though the Tenth Circuit has not adopted a minimum presumption for numerosity, the Court may make "'common sense assumptions'" to support a finding that joinder is impracticable.  *Id*. at 1221 (quoting *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002)).  It is commonplace that in securities actions such as the one here, numerosity is easily presumed.  *See, e.g., Thornburg*, 912 F. Supp. 2d at 1233-34 (collecting cases); *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *19 (finding

numerosity requirement satisfied "in light of the Settling Parties' representation that the Settlement Class consists of thousands of individuals").[6]

There can be no dispute that the Class here satisfies the numerosity requirement. During the relevant period, Level 3's common stock traded on the New York Stock Exchange. During the relevant period, approximately 359 million shares of Level 3 common stock were outstanding, and owned by hundreds, if not thousands of persons. Accordingly, there exists a common sense assumption that the numerosity requirement is met.

### B.    Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In other words, "plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class." *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *20. Commonality does not require that class members share all issues in the suit, but rather "'only a single issue common to the class'" must exist. *Thornburg*, 912 F. Supp. 2d at 1222 (quoting *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289 (D.N.M. 2002)). The commonality requirement is permissively applied in securities fraud actions. *Thornburg*, 912 F. Supp. 2d at 1222 ("'Securities cases often involve allegations of common courses of fraudulent conduct, which can be sufficient to satisfy the commonality requirement.'"); *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *21 ("whether these material omissions and misrepresentations occurred

---

[6] *See also McEwan v. Digitran Sys.*, 160 F.R.D. 631, 636 (D. Utah 1994) ("The numerosity requirement of Rule 23 is satisfied in a securities fraud case if the stock at issue is nationally traded.").

is a factual and legal question that is common to the entire class and is capable of class wide resolution").[7]

The Action necessarily encompasses questions of law and fact common to all Class Members that can be resolved in one swift stroke.  Here, Plaintiff alleged that Defendants violated Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by providing false and/or misleading information to solicit Level 3 shareholder approval in connection with the Merger.  These facts and legal theories are common to all shareholders. Thus, the commonality requirement is met.

### C.      Rule 23(a)(3): Typicality

The typicality requirement of Rule 23(a)(3) is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *22 (quoting *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  The inquiry focuses on whether the named plaintiffs' interests are sufficiently aligned with the class's interest as a whole.  *Thornburg*, 912 F. Supp. 2d at 1222-23.  Rule 23(a)(3) does not require, however, that plaintiffs' interests and claims be identical to those of the class.  Instead, "provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality."  *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *22 (citing *DG v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010)).

---

[7] *See also In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 87 (S.D.N.Y. 2004) ("In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied.").

Here, Plaintiff's claims that Defendants violated Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by providing false and/or misleading information to solicit Level 3 shareholder approval in connection with the Merger are identical to those of the other members of the Class. Plaintiff, like all members of the Class, held Level 3 shares during the relevant period, and has obtained curative disclosures regarding the Merger. All Class Members hold claims identical to those pressed by Plaintiff and the relief gained through the Settlement benefits Plaintiff and Class Members equally. Thus, the typicality requirement of Rule 23(a)(3) is met.

### D.    Rule 23(a)(4): Adequacy of Representation

The adequacy prong of Rule 23 requires two showings: (i) there must be no antagonism or disabling conflict between the interests of the named class representatives (and their counsel) and the members of the class; and (ii) class counsel must be qualified, experienced, and generally able to vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

Neither Plaintiff nor his counsel have any interests antagonistic to those of the absent Class Members. Further, Plaintiff and each member of the Class have strong and identical interests in establishing liability based on Defendants' alleged violations of the Exchange Act. In short, Plaintiff is united in achieving the best recovery possible for the Class. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("'[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.'").

Moreover, Plaintiff's Counsel have devoted substantial time and resources to investigating, initiating, and prosecuting the Action. Counsel representing the Class in this case include qualified lawyers with thorough experience in successful prosecution of class actions. *See* Plaintiff's Counsel's firm resumes attached as Exhibits 2 and 3 to the Acocelli Decl. The adequacy requirement has been met.

### E.    Certification Is Maintainable Under Federal Rule of Civil Procedure 23(b)(2)

Rule 23(b)(2) requires plaintiffs to show that defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Here, Plaintiff's claims are based on the same facts, legal theories and applicable law as those of Class Members – for example, whether Defendants violated Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by providing false and/or misleading information to solicit shareholder approval in connection with the Merger. Such claims are well-suited for mandatory class certification. *See, e.g., Turner v. Bernstein*, 768 A.2d 24 (Del. Ch. 2000):

> Typically an action challenging the propriety of director action in connection with a merger transaction is certified as a (b)(1) or (b)(2) class because [1] plaintiff seeks equitable relief (injunction); [2] because all members of the stockholder class are situated precisely similarly with respect to every issue of liability and damages; and [3] because to litigate the matters similarly would subject the defendant to the risk of difficult standards of conduct with respect to the same action.

*Id*. at 30-31.

Plaintiff's claims were predominantly for injunctive and other equitable relief based upon, inter alia, allegations that Defendants violated Sections 14(a) and 20(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder by providing false and/or misleading information to solicit shareholder approval in connection with the Merger. The remedy obtained on behalf of Class Members – the dissemination of the Supplemental Disclosures is entirely equitable in nature. As such, approval of a settlement certifying a non-opt-out class is appropriate.

### F.    Plaintiff's Counsel Should Be Appointed Class Counsel

Pursuant to the Federal Rules of Civil Procedure, "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). As discussed above, Plaintiff's Counsel have and will continue to fairly and adequately represent the Class. Plaintiff's Counsel are intimately familiar with the facts of this case, knowledgeable of the applicable law, and extremely experienced in handling securities class actions. To date, Plaintiff's Counsel have performed substantial work identifying and investigating the claims here, and have committed the necessary resources to vigorously prosecute the Action on behalf of the Class. Plaintiff's Counsel have extensive experience prosecuting securities class actions and have been responsible for achieving outstanding benefits for investors. Accordingly, Plaintiff respectfully requests that Plaintiff's Counsel be appointed as class counsel for the Class.

In sum, the Class meets all criteria for certification and should be certified for purposes of effectuating this Settlement.

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Parties are requesting the Court to establish dates by which Notice of the Settlement will be sent to potential Class Members and by which Class Members may object to the Settlement, and to set the Final

16

Settlement Hearing date.  The following is a proposed schedule of events leading to the Final

Settlement Hearing.

| | |
|---|---|
| Notice shall be mailed to the Class | At least seventy-five (75) calendar days prior to the Final Settlement Hearing |
| Class Action Fairness Act Notice shall be served | No later than ten (10) calendar days following the filing of the Stipulation |
| All papers including memoranda or briefs in support of final approval of the proposed Settlement and Plaintiff's Counsel's application for an award of attorneys' fees and reimbursement of expenses shall be filed and served | No later than forty-two (42) calendar days prior to the Final Settlement Hearing |
| Any objections by Defendants to the fee, cost and expense application shall be filed and served | No later than twenty-one (21) calendar days prior to the Final Settlement Hearing |
| Last day for Class Members to object to the Settlement | No later than twenty-one (21) calendar days prior to the Final Settlement Hearing |
| All reply papers in support of final approval of the proposed Settlement or Plaintiff's Counsel's application for an award of attorneys' fees and reimbursement of expenses shall be filed and served | No later than seven (7) calendar days prior to the Final Settlement Hearing |
| Final Settlement Hearing | At least one hundred (100) calendar days after entry of the Preliminary Approval Order in accordance with the Court's availability |

17

This schedule is similar to those used in numerous class action settlements and provides due process to Class Members with respect to their rights concerning the Settlement.

## VI.    CONCLUSION

In the judgment of Plaintiff's Counsel, the proposed Settlement is a fair compromise of the issues in dispute.  After weighing the benefits of this Settlement against the uncertainty and risks of continued litigation, Plaintiff and his counsel believe that the proposed Settlement is fair, reasonable, and adequate and warrants preliminary approval.

Plaintiff respectfully requests the Court to preliminarily approve the proposed Settlement and enter the Preliminary Approval Order.

Dated:  March 28, 2018                    Respectfully submitted,

**WeissLaw LLP**


By: _/s/ Richard A. Acocelli_
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Tel:  212-628-3025
Fax:  212-682-3010


Donald J. Enright
Levi & Korsinsky LLP
1101 30th Street, N.W., Suite 115
Washington, DC  20007
Tel: (202) 524-4290

_Counsel for Plaintiff_

## CERTIFICATE OF SERVICE

I hereby certify that the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Brief in Support; the Declaration of Richard A. Acocelli in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (with Exhibits 1-3); and the [Proposed] Order Preliminarily Approving Settlement were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

*/s/ Richard A. Acocelli*
RICHARD A. ACOCELLI